UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CREW VENTURES, LLC, GBSZ,
LLC, doing business as Grand Banks,
*and* FV Sherman Zwicker LLC,

                    Petitioners,

        – against –

ADAM PHILLIPS,

                    Respondent.

**OPINION & ORDER**

24-cv-6941 (ER)

RAMOS, D.J.:

      Crew Ventures, LLC, GBSZ, LLC, doing business as Grand Banks, and FV Sherman Zwicker LLC (collectively, "Petitioners") commenced this action seeking exoneration or limitation of liability from Adam Phillips' personal injury claims filed in the New York State Supreme Court. Doc. 1 at 1-3. Before the Court is Petitioners' *ex parte* motion requesting an order approving an *ad interim* stipulation for value,[1] enjoining proceedings against Petitioners, and/or the Vessel, Sherman Zwicker outside this action,[2] and directing issuance of notice to claimants.[3] Doc. 4 at 1. For the reasons discussed below, the motion is GRANTED.

---

[1] An *ad interim* stipulation for value operates as security in a proceeding for limitation of liability. *Hartford Accicent & Indemnity Co. of Hartford v. Southern Pacific Co.*, 273 U.S. 207, 218 (1927). The stipulation acts as a substitute for the vessel, allowing the vessel to remain in operation while limitation proceedings are ongoing. *Id*.

[2] Petitioners include the Sherman Zwicker in their motion, which Phillips did not include as a defendant in his personal injury claim. Doc. 1 at ¶ 11.

[3] While Petitioners filed the motion *ex parte*, Phillips received notice of the motion and filed a memorandum in opposition. *See* Doc. 7.

I.  BACKGROUND
    A. Factual Background

Petitioners own the Sherman Zwicker, a 1942, 142-foot timber-constructed,[4] "Grand Banks auxiliary fishing schooner."[5] Doc. 1 at ¶ 7-8. From its launch until 2014, it functioned as a fishing schooner and moving maritime museum. Doc. 9-1 at 1. Currently, the Sherman Zwicker is docked at Battery Park in Manhattan, New York City. Doc. 8 at 6. Since May of 2014, the Sherman Zwicker has taken 13 voyages from its homeport to Brooklyn, Connecticut, and Maine. *Id*. at 3-4. It goes to Connecticut each winter for repairs and rebuild. *Id*. at 8.

Petitioners also operate a restaurant, the Grand Banks Restaurant, on the Sherman Zwicker. Doc. 1-1 at 3. On July 29, 2023, Phillips allegedly visited the restaurant and was struck by an unsecured umbrella, suffering injuries. Doc. 7 at 2. He filed a complaint for personal injuries against Petitioners in the Supreme Court of the State of New York, New York County on May 29, 2024. Doc. 1 at ¶¶ 11, 13. Despite owning the restaurant, Petitioners allege lack of privity or knowledge of the alleged incident. *Id*. at ¶¶ 12, 17-18.

An initial appraisal report conducted on September 12, 2024, valued the Sherman Zwicker as $200,000 as of July 29, 2023, the day of the incident. *Id*. at ¶ 20; Doc. 1-1 at 2, 4. The report further noted that the Sherman Zwicker "does not have propulsive capability, as the propeller and rudder were removed, prohibiting it from practical use as transportation on" water. Doc. 1-1 at 3. However, an addendum to the appraisal report

---

[4] Petitioners describe the Sherman Zwicker as either 142 or 147-foot long vessel throughout their pleadings. Since the size of the structure is not material to the case, the Court will assume that the structure is 142-feet, as that is the size most frequently cited by Petitioners.

[5] An auxiliary fishing schooner is a type of sailing vessel typically featuring a "2-masted fore-and-aft rig… with a foremast and a mainmast stepped nearly amidships" and uses an auxiliary engine. *Schooner*, Merriam-Webster, https://www.merriam-webster.com/dictionary/schooner (last visited April 10, 2025); *Auxiliary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/auxiliary (last visited April 10, 2025). Grand Banks refers to the region of Newfoundland that the vessel was built to fish. *Sherman Zwicker, Grand Banks Dory Fishing Schooner*, Mariners' Museum and Park, https://catalogs.marinersmuseum.org/object/CL14124 (last visited April 10, 2025).

stated that the propeller and rudder were undergoing repairs and would be reinstalled, which would allow the structure to "have the capacity for self-propulsion" without changing the configuration of its floating hull. Doc. 9-1 at 2. Despite the absence of the propeller and rudder, the Sherman Zwicker had its original auxiliary propulsion engine, which was rebuilt in 2010. *Id*. at 1.

### B. Procedural History

Petitioners filed the instant complaint on September 13, 2024 claiming admiralty jurisdiction and seeking exoneration from or limitation of liability from Phillips' personal injury claims in the New York State Court. Doc. 1 at 1-3.

Petitioners now move for a court order authorizing the filing of an *ad interim* stipulation for value, enjoining proceedings against Petitioners, and/or the Vessel, Sherman Zwicker outside this action, and directing issuance of notice to claimants. Doc. 4 at 1. Petitioners proffer an *ad interim* stipulation for value in the amount of $200,000 with respect to their interest in the Sherman Zwicker and a corresponding Letter of Undertaking issued by Continental Insurance Company, adding an interest rate of six percent per annum. *Id*. at ¶¶ 3, 23.

## II. DISCUSSION
### A. The Court has admiralty jurisdiction over this matter because the Sherman Zwicker is a "vessel"

Before the Court considers Petitioners' motion, Phillips argues that the Court lacks jurisdiction over the case because the Sherman Zwicker is "no longer a "vessel" for purposes of admiralty jurisdiction." Doc.7 at 1. Therefore, the Court first considers whether the Sherman Zwicker is a vessel, and thus, whether the Court has admiralty jurisdiction over this matter.

Article III, Section 2 of the Constitution provides that federal courts have jurisdiction over cases of admiralty and maritime jurisdiction. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 443 (2001). However, the relevant jurisdictional statute states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of

the States, of… any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." 28 U.S.C. § 1333(1) (emphasis added).  The Supreme Court interpreted the "saving suitors clause" as "preserv[ing] remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims."  *Lewis*, 531 U.S. at 445.

The Vessel Owners Limitation of Liability Act ("VOLLA"), 46 U.S.C. § 30501, allows a vessel owner, in federal court, "to limit its liability in certain actions for damages to the value of the vessel… on which the incident giving rise to the litigation occurred." *In re Eckstein Marine Service L.L.C.*, 672 F.3d 310, 314 (5th Cir. 2012).  Congress defined "vessel" as including "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."  1 U.S.C. § 3.  However, "not *every* floating structure is a "vessel.""  *Lozman v. City of Riviera Beach*, 568 U.S. 115, 120 (2013).  If a watercraft is incapable of "being used for maritime transport in any meaningful sense," such as being "permanently moored or otherwise rendered practically incapable of transportation or movement," then it would not constitute a vessel.  *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 494 (2005). The Supreme Court further elaborates that "capable of being used" relates only to "practical" possibilities and not "merely… theoretical" ones.  *Lozman*, 568 U.S. at 118 (citing *Stewart*, 543 U.S. at 496).  However, Section 3 "does not require that a watercraft be used primarily for [the] purpose" of being used for transportation on water.  *Stewart*, 543 U.S. at 495.  Therefore, the Supreme Court established a test to determine that whether a watercraft is a vessel.  *See Lozman*, 568 U.S. at 121.  Namely, a structure is a vessel for purposes of VOLLA, if "a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water."  *Id*.

In this case, the structure at issue is a 142-foot long, timber constructed, Grand Banks auxiliary fishing schooner.  Doc. 1 at ¶ 7-8.  While it was originally used as a

4

fishing schooner and later as a moving maritime museum, Doc. 9-1 at 1, Petitioners currently operate a restaurant on the Sherman Zwicker and keep it docked at Battery Park.  Doc. 1-1 at 3; Doc. 8 at 6.  Based on the structure's current use, Phillips argues that it is not a "vessel" for purposes of admiralty jurisdiction, citing multiple cases outside the Second Circuit, which find that "permanently moored and semi-permanently moored boats converted for non-transportation purposes were not 'vessels.'"  Doc. 7 at 4 (citing *Thomas v. Riverfront Limestone LLC*, 2018 WL 1413342 (W.D. Ky. 2018); *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir. 1989); *Martin v. Boyd Gaming Corp.*, 252 F. Supp. 2d 321 (E.D.La. 2003)).

While the Sherman Zwicker is docked in Battery Park, it is not permanently or semi-permanently moored.  Doc. 8 at 5; *see Lozman*, 568 at 124 (noting "a structure may qualify as a vessel even if attached- but not "permanently" attached- to the land or the ocean floor").  Moreover, although it is being used to operate a restaurant, it has not been permanently converted for non-transportation purposes.  Doc. 8 at 8.  Each winter, the Sherman Zwicker undergoes repairs for restoration and rebuild in Connecticut.  *Id*.  While the propeller and rudder were removed for repairs, it continues to maintain its original auxiliary propulsion engine and the reinstallation of the propeller and rudder would not change the configuration of its floating hull.  Doc. 9-1 at 1-2; *compare with Stewart*, 543 U.S. at 494 (citing *Kathriner v. UNISEA, Inc.*, 975 F.2d 657, 660 (9th Cir. 1992) (finding that the floating processing plant was no longer a vessel, as it was permanently moored and a "large opening was cut into her hull," rendering it incapable of moving over water)).

Although the Sherman Zwicker lacked self-propulsive capabilities at the time of the accident, Doc. 1-1 at 3, the Supreme Court held that "lack of self-propulsion is not dispositive," but "it may be a relevant physical characteristic."  *Lozman*, 568 U.S. at 122.  Rather, the Court focuses more on the overall design of the ship and whether it is "designed to a practical degree for transportation on water."  *See id*. at 121-122.

5

Regardless of the Sherman Zwicker's lack of self-propulsive capabilities at the time of the accident, the initial and addendum appraisals do not suggest that the structure was "practically incapable of transportation." *Stewart*, 543 U.S. at 494 (holding that a structure is not a vessel if it is no longer practically capable of being used as a means of transportation). Instead, it is often towed from its homeport to Brooklyn, Connecticut, and Maine, which is "one of the most common methods of transportation" for vessels. Doc. 9-1 at 1-2; *compare with Thomas*, 2018 WL 1413342, at *3-4 (finding that the barge's modifications, including its conversion to a fixed dock barge and thinning of the hull, made it unfit to tow, thus rendering it unfit for general transportation and not a "vessel").

The Court finds that the Sherman Zwicker is a "vessel" because a reasonable observer would conclude that, given its overall maintained physical structure and continued transportation activities, it is designed to transport people or cargo. *See Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 144 (2d Cir. 2005) (holding that "a ship does not move in and out of 'vessel' status because it is temporarily 'at anchor, docked… or berthed for minor repairs'"); c*ompare with Lozman*, 568 U.S. at 122 (finding that a floating home did not qualify as a "vessel," as it was not designed or used to transport people or cargo and required a second boat to follow behind the home when towed "to prevent the home swinging dangerously from side to side"). Accordingly, the Sherman Zwicker is a "vessel" for purposes of admiralty jurisdiction.

### B. The Court approves the *ad interim* stipulation for value, enjoins proceedings, and directs issuance of notice to claimants

Pursuant to VOLLA, a vessel owner may limit his liability to the value of the vessel for "any loss, damage, or injury by collision… done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). A vessel owner must file a complaint within six months of receiving written notice of a claim. Federal

Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. AMC) F(1); 46 U.S.C. § 30529(a).

After filing the action, the vessel owner shall: "deposit with the court, for the benefit of claimants: (a) an amount equal to the value of the owner's interest in the vessel, or approved security; and (b) an amount, or approved security, that the court may fix from time to time as necessary." 46 U.S.C. § 30529(b)(1). For the security requirement, Petitioners "shall also give security for costs and, if [they] elect to give security, for interest at the rate of 6 percent per annum from the date of the security." Fed. R. Civ. P. Supp. AMC F(1). A claimant may challenge the sufficiency of the security via a motion "on the ground that [it is] less than the value of the plaintiff's interest in the vessel" and demand that the deposited funds be increased. *Id*. at F(7).

Once Petitioners comply with the additional security costs and deposit the appropriate security with the Court, "all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease." *Id*. at F(3). The Court shall, upon motion, also "enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." *Id*. Lastly, the Court will issue a notice to all persons asserting claims to which the complaint seeks to limit, "admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice." *Id*. at F(4).

In this case, Petitioners timely filed their complaint within six months of written notice of Phillips' claim and allege their lack of privity or knowledge of the alleged incident. Doc. 1 at ¶¶ 12, 17-18, 26. Based on an appraisal and calculations of the post-casualty value of the Sherman Zwicker, Petitioners proffer an *ad interim* stipulation for value totaling $200,000. *Id*. at ¶ 23. They also offer a Letter of Undertaking issued by Continental Insurance Company, indicating an interest rate of six percent per annum. *Id*. at ¶ 25. Courts often find that *ad interim* stipulations for value based on due appraisal

7

and Letters of Undertaking are sufficient security in limitation proceedings. *See Matter of Compania Naviera Marasia S. A., Atlantico*, 466 F. Supp. 900, 901-903 (S.D.N.Y. 1979). Phillips does not dispute the sufficiency of the *ad interim* stipulation for value, the letter of undertaking, or the valuation of the Sherman Zwicker. Accordingly, the Court finds that Petitioners have complied with the necessary procedural requirements.

Therefore, the Court approves the *ad interim* stipulation for value totaling $200,000 plus six percent interest per annum, complying with the Federal Rules of Civil Procedure Supplemental Rule F(1). The Court also enjoins proceedings against Petitioners related to Phillips' claims subject to limitation in the action and directs notice to claimants pursuant to the Federal Rules of Civil Procedure Supplemental Rule F(3) and F(4).

### III.  CONCLUSION

For the reasons stated above, Petitioners' motion requesting an order approving *ad interim* stipulation for value, enjoining proceedings against Petitioners, and/or the Vessel, Sherman Zwicker outside this action, and directing issuance of notice to claimants is GRANTED.

It is SO ORDERED.

Dated:   April 22, 2025
         New York, New York

                                                          _____
                                                          EDGARDO RAMOS, U.S.D.J.